UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Case No.: 11-05838 |
| Windy Acquisition, LLC, d/b/a | ) | |
| Gage Food Products, d/b/a | ) | Chapter: 11 |
| Dale Foods, | ) | Honorable John H. Squires |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

## Final Order for Authority to Obtain
## Post Petition Financing and Provide Adequate Protection

This cause coming to be heard upon Debtor's Emergency Motion for Authority to Obtain Post Petition Financing and Provide Adequate Protection ("Motion"); the Court having conducted a preliminary hearing to grant interim relief pending a further hearing; the Court having entered a second interim order on or about February 24, 2011 ("Second Interim Order") and having conducted a further interim hearing;

The Court being advised that the Debtor has contacted Crestmark Bank (the "Bank") regarding an immediate need of funding and to use cash collateral to continue operations during its Chapter 11 bankruptcy proceeding; the Bank having agreed to provide the necessary funding and the use of its cash collateral upon the conditions set forth below, and the parties represent as follows:

A. On February 15, 2011 (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). Since that time, Debtor has remained in possession of its assets and has continued to operate and manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Code.

B. The Bank previously entered into financing arrangements with Debtor and Guarantor (as hereinafter defined) pursuant to, among others, the following documents (the "Pre-Petition Loan Documents"):

1. A Third Amended and Restated Promissory Note (Line of Credit) dated May 31, 2009, in the stated principal amount of $500,000;

2. A Loan and Security Agreement dated August 5, 2004, Amendment No. 1 to Loan and Security Agreement and Collateral Documents dated August 30, 2004, Amendment No. 2 to Loan and Security Agreement and Collateral Documents dated June 12, 2006, Amendment No. 3 to Loan and Security Agreement and Collateral Documents dated February 2, 2007, and Amendment No. 4 to Loan and Security Agreement and Collateral Documents dated May 31, 2009 (collectively the "Loan Agreement");

3. The Validity Guaranty (the "Guaranty") from Dean Calvert (the "Guarantor");

4. A UCC-1 Financing Statement covering all assets of Debtor recorded on August 6, 2004 and continued on June 18, 2009, with the Michigan Department of State.

C. All capitalized terms not defined herein shall have the meaning given to such terms in the Pre-Petition Loan Documents.

D. As of the Petition Date, Debtor was indebted to the Bank in the approximate amount of $116,000.00, plus fees and costs allowed under the Pre-Petition Loan Documents (the "Pre-Petition Indebtedness"). Since the Petition Date, Debtor has paid down the original indebtedness to approximately $2,647.73. The Bank has

extended new funds in the amount of $100,950.11 secured by new accounts receivable. Because less than 2% of the Pre-Petition Indebtedness remains, the effect of any pre-petition debt paid by post-petition funds is de minimus.

E. The Bank asserts that under the Pre-Petition Loan Documents, Debtor granted to the Bank liens and security interests in all personal property of Debtor in existence as of the Petition Date (the "Pre-Petition Collateral").

F. Debtor asserts that the value of the Pre-Petition Collateral as of the Petition Date is at least equal to the amount of the Pre-Petition Indebtedness, and therefore, the Bank is fully secured.

G. The Pre-Petition Loan Documents provide for the Bank's dominion of funds and Debtor has no rights in or authority to use the cash receipts generated in its business operations absent an order of the Court or the agreement of the Bank.

H. To continue the operation of its business during the Chapter 11 reorganization process, Debtor represents that it must use cash collateral and obtain secured financing from the Bank to pay post-Petition Date obligations incurred by Debtor in the ordinary course of its business.

I. Debtor desires that the Bank continue its line of credit after the Petition Date under the terms of the Pre-Petition Loan Documents to enable Debtor to continue to operate pursuant to the terms and conditions described in this Order.

J. Debtor urgently requires financing under Section 364 of the Bankruptcy Code to fund daily operations. Debtor's inability to fund daily operations could result in a long-term negative impact on the value of Debtor to the prejudice and detriment of Debtor and its creditors, customers and employees.

K. Debtor represents that it is presently unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense, unsecured credit allowable under Section 364(a) or (b) of the Code or secured credit under Section 364(c) of the Code, other than credit from the Bank as provided in this Order pursuant to Section 364(d) of the Code.

L. Good cause has been shown for entry of this Order. Among other things, the entry of this Order will minimize disruption of Debtor's business as a going concern and will increase the possibility of a successful rehabilitation, and therefore is in the best interest of Debtor, the estate, and its creditors.

M. The terms of this Order and the financing contemplated herein have been negotiated at arms' length with all parties represented by experienced counsel, are fair and reasonable under the circumstances, are for reasonably equivalent value and fair consideration, and are in good faith as that term is used in §364(e) of the Code. Accordingly, the Bank in making advances pursuant to this Order is entitled to the protection subscribed in §364(e) of the Code.

N. Debtor will provide notice of this Order to the U.S. Trustee's office, all creditors holding secured claims of record who have an interest in the cash collateral of Debtor, the unsecured creditor's committee (if there is one), its counsel (if counsel has been retained), and the creditors holding the 20 largest unsecured claims (according to the list filed by Debtor pursuant to Bankruptcy Rule 1007(d)), and such notice shall constitute sufficient "notice and a hearing," without the need for notification of any further entities under Section 102 of the Code and Bankruptcy Rules 2002 and 4001.

O. This Order is entered in a "core" proceeding within the meaning of 28 U.S.C. § 157.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

SECTION 1: PRE-PETITION LOAN DOCUMENTS

1.1 Subject to the rights of creditors or a Committee to file objections, the Pre-Petition Indebtedness constitutes valid and binding obligations of Debtor and Guarantor to the Bank, which is secured by all personal property of Debtor, which liens and security interests are valid and properly perfected. Such liens shall continue pursuant to Section 552(b) of the Code.

1.2 The Pre-Petition Loan Documents are incorporated herein by reference and shall be construed and considered as post-Petition Date agreements between Debtor and the Bank under this Order (except to the extent inconsistent herewith or modified hereby). The Bank shall continue to have dominion over all funds and Debtor has no rights in or authority to use cash collateral and receipts generated in its business operations except as provided in this Order.

1.3 Debtor is hereby authorized to borrow money and seek other financial accommodations from the Bank and is ordered to perform its obligations hereunder in accordance with the terms hereof. All loans and obligations incurred on or after the Petition Date by Debtor to the Bank pursuant to this Order are referred to as the "DIP Indebtedness", and together with the Pre-Petition Indebtedness, as the "Indebtedness". All loans advanced hereunder will be deemed to be additional loans under the Pre-Petition Loan Documents, subject to the rights and priorities provided herein, and will be advanced by the Bank to Debtor and be guaranteed by the Guarantor, as provided in the Pre-Petition Loan Documents. The Bank shall not be required to provide any financing to Debtor unless and until the Guarantor ratifies and reaffirms his Guaranty in favor the Bank by executing this Order where indicated below.

SECTION 2: LOAN AUTHORIZATIONS

2.1 Debtor is hereby authorized to borrow from the Bank pursuant to the terms and conditions of the Pre-Petition Loan Documents (as modified herein), and to use proceeds of the DIP Indebtedness (collectively, the "Funding") during the term of this Order for the payment of post-Petition Date obligations incurred by Debtor in the ordinary course of its business.

2.2 All proceeds and collections of the Pre-Petition Collateral and the DIP Collateral (as hereinafter defined) must be forwarded to the Blocked Account at the Bank. The funds forwarded to the Blocked Account will be applied to the Pre-Petition Indebtedness first as provided in the Loan Agreement.

2.3 Provided that Debtor complies with the requirements of the Pre-Petition Loan Documents, including the requirements of Section 2 of the Loan Agreement, and that the Indebtedness does not exceed the Advance Formula, the Bank may make advances to Debtor as working capital.

2.4 Until a breach of a provision of this Order or future default under the Loan Document, all Pre-Petition Indebtedness and DIP Indebtedness shall bear interest beginning as of the Petition Date equal to four percent (4.0%) per annum in excess of the Wall Street Journal Prime Rate. As incurred, the Bank shall be entitled to recover all of its reasonable out of pocket expenses ("Bank Expenses"), including reasonable consultants, attorneys' and paralegal fees, costs and expenses, incurred in connection with the Indebtedness, subject only to a final, non-appealable Order that the fees and expenses incurred and paid were unreasonable. After a breach of a provision of this Order or future default under the Loan Agreement, all Pre-Petition Indebtedness and DIP Indebtedness shall bear interest equal to eight percent (8.0%) per annum in excess of the Wall Street Journal Prime Rate.

SECTION 3: ADEQUATE PROTECTION

3.1 To secure the DIP Indebtedness, and as adequate protection for and to protect the Bank against any diminution in the value of the Pre-Petition Collateral, the Bank is hereby granted, pursuant to Section 364(c)(2) and 364(c)(3) of the

Bankruptcy Code, a first lien on all personal property and assets of Debtor of any kind and nature whatsoever, whether now owned or hereafter acquired by Debtor, and all proceeds, rents or profits thereof, including all of the Pre-Petition Collateral and any unused or unearned retainers, deposits, or prepaid items (collectively, the "DIP Collateral"). Any pre-petition security interest or lien on the Pre-Petition Collateral which is avoided or otherwise preserved for the benefit of Debtor's estate under Section 551 or any other provisions of the Bankruptcy Code shall be subordinate to the security interests in favor of the Bank on the DIP Collateral.

3.2 All liens and security interests in the DIP Collateral granted to the Bank by this Order are deemed duly perfected and recorded under all applicable laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order or act shall be required to effect or continue such perfection, although the Bank may, in its sole discretion, and at Debtor's expense, make any filings or recordations or other acts it deems appropriate with respect to such perfection.

3.3 Through the Final Hearing (hereinafter defined), and thereafter if this Order becomes a Final Order, all collections and proceeds of any Pre-Petition or DIP Collateral and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of Debtor, or to which Debtor shall become entitled to at any time ("Post-Petition Collections"), shall be deposited or forwarded into the Blocked Account with the Bank. Post-Petition Collections shall first be applied to the Pre-Petition Indebtedness and then to the Post-Petition Indebtedness. All banks in which any lockboxes and blocked accounts of Debtor exist are authorized and directed to comply with any request of the Bank to turn over to the Bank all funds therein, or collected after the Petition Date, without offset or deduction of any kind.

3.4 No sale, lease or other disposition of DIP Collateral outside of the ordinary course of business (including collection of accounts receivable or any liquidation, auction or other similar sales) may be done without the Bank's prior written consent. The Bank's right to credit bid the Bank's claims at any such sales pursuant to Section 363(k) of the Bankruptcy Code shall be preserved.

3.5 Debtor shall permit the Bank and any authorized representatives designated by the Bank, including auditors and appraisers engaged by the Bank, reasonable access to visit and inspect any of the properties of Debtor during normal business hours, to review Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss Debtor's affairs, finances and business with Debtor's officers, consultants, and accountants. Without limiting the generality of the foregoing, Debtor shall promptly provide to the Bank and its designated representatives any information or data reasonably requested to monitor Debtor's compliance with the provisions of this Order and to perform audits, appraisals or other valuation analyses of any property of Debtor.

3.6 All of the Bank's rights are expressly reserved if no Final Order is entered within three business days after the Final Hearing Date. Nothing in this Order shall constitute a finding with respect to the adequacy of the protection of Bank's interests in the Pre-Petition Collateral. Except as otherwise specifically provided herein, the Bank does not waive any rights it has pursuant to the Pre-Petition Loan Documents, and the Bank shall retain all rights available pursuant to the Bankruptcy Code or any other applicable law. The Bank has no commitment to provide funding beyond (i) the occurrence of an event of default; or (ii) the Termination Date (as hereinafter defined).

3.7 The rights and obligations of Debtor and the rights, claims, liens, security interests and priorities of the Bank arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by Debtor, as a pre-Petition Date debtor, under the Pre-Petition Loan Documents.

3.8 The provisions of this Order shall be binding upon and inure to the benefit of

the Bank and Debtor.

3.9 This Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize Debtor to obtain credit on the terms and conditions upon which Debtor and the Bank have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code except as otherwise provided herein.

3.10 Debtor, at its expense, shall (a) continue to keep all collateral insured to its maximum insurable value against all loss, peril and hazard and name the Bank as lender's loss payable under such policies; and (b) pay any and all post-petition taxes, assessment and governmental charges, except to the extent such are being contested in good faith by appropriate proceedings and Debtor shall maintain appropriate cash reserves for these expenses and (c) provide the Bank with proof of the foregoing within 3 days of written demand. Copies of all federal tax returns, federal tax deposits and other payments made by Debtor during the pendency of this Order shall be mailed to Bank.

SECTION 4: COVENANTS AND REPORTING REQUIREMENTS

4.1 Debtor shall comply with all covenants and maintain all formulas contained in the Pre-Petition Loan Documents.

4.2 Debtor will promptly give the Bank prior written notice of the occurrence of any event or any matter which has resulted or will result in a material adverse change in its business, assets, operations or financial condition.

4.3 The Debtor and the Bank may agree to extend this Order without further order of the Court, provided, the Bank shall have no obligation to do so.

SECTION 5: DEFAULT, RIGHTS AND REMEDIES OF THE BANK AND SERVICE

5.1 Each of the following events shall constitute an event of default hereunder:

    (a) An order dismissing the case, converting the case to Chapter 7, appointing an examiner with expanded powers or a trustee, or terminating the authority of Debtor to conduct business;

    (b) Failure of Debtor to make any payment when due;

    (c) There is a default (other than payments) by Debtor under this Order or the Pre-Petition Loan Documents; or

    (d) Debtor fails to make a payment after demand by the Bank.

5.2 Upon the Termination Date (as hereinafter defined) or the occurrence of an event of default the Bank shall be entitled to an expedited hearing to lift the automatic stay to enable the Bank to realize on all collateral and to exercise any of its rights under the Pre-Petition Loan Documents.

    "Termination Date" shall mean May 31, 2011, provided that the Bank may agree in writing to extend the Termination Date without further order of this Court.

5.3 The Bank shall have no obligation to advance any funds to Debtor unless and until:

    (a) Debtor has executed such additional loan documents as the Bank may reasonably request; and

    (b) Debtor has complied with all the terms and conditions of the Pre-Petition Loan Documents.

SECTION 6: OTHER RIGHTS, OBLIGATIONS AND PROVISIONS

6.1 Debtor is authorized and directed to perform all acts, and execute and comply with, the terms of such other documents, instruments and agreements that the Bank may reasonably require and/or which may otherwise be deemed necessary by the Bank to effectuate the terms and conditions of this Order, including, without limitation, such documents as the Bank may deem necessary to correct defects in title and like matters.

6.2 No delay or failure to exercise any right, power or remedy accruing to the Bank upon breach or default by Debtor under this Order or any document or agreement shall impair any such right, power or remedy of Bank nor shall it be construed to be a waiver of any such breach or default, nor of any breach or default theretofore or thereafter occurring, nor an acquiescence therein.

6.3 Consent to this Order may be given by counterparts and/or facsimile signatures.

Enter: _/s/ John H. Squires_

Honorable John H. Squires
United States Bankruptcy Judge

Dated: MAR 29 2011

**Prepared by counsel of Movant:**

Abraham Brustein, #0327662
Julia Jensen Smolka, #6272466
DiMonte & Lizak, LLC
216 W. Higgins Rd.
Park Ridge, IL 60068
Tel: (847) 698-9600
Fax: (847) 698-9623
abrustein@dimontelaw.com
jsmolka@dimontelaw.com

Rev: ILNB20100428_bko