UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re: ) | Case No.: 11-05838 |
| Windy Acquisition, LLC, d/b/a ) | |
| Gage Food Products, d/b/a ) | Chapter: 11 |
| Dale Foods, ) | Honorable John H. Squires |
| ) | |
| ) | |
| Debtor(s) ) | |

### Fifth Interim Order for Authority to Use Cash Collateral

This cause coming to be heard upon Debtor's Emergency Motion for Authority to Use Cash Collateral ("Motion"); the Court having conducted a preliminary hearing to grant interim relief pending a further hearing; the Court having entered a fourth interim order on or about March 31, 2011 ("Fourth Interim Order"), and having conducted a further interim hearing;

The Court being advised that the Debtor has contacted Crestmark Bank (the "Bank") regarding an immediate need of funding and to use cash collateral to continue operations during its Chapter 11 bankruptcy proceeding; the Bank having agreed to provide the necessary funding and the use of its cash collateral upon the conditions set forth below, and the parties represent as follows:

A. On February 15, 2011 (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). Since that time, Debtor has remained in possession of its assets and has continued to operate and manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Code.

B. The Bank previously entered into financing arrangements with Debtor and Guarantor (as hereinafter defined) pursuant to, among others, the following documents (the "Pre-Petition Loan Documents"):

1. A Third Amended and Restated Promissory Note (Line of Credit) dated May 31, 2009, in the stated principal amount of $500,000;

2. A Loan and Security Agreement dated August 5, 2004, Amendment No. 1 to Loan and Security Agreement and Collateral Documents dated August 30, 2004, Amendment No. 2 to Loan and Security Agreement and Collateral Documents dated June 12, 2006, Amendment No. 3 to Loan and Security Agreement and Collateral Documents dated February 2, 2007, and Amendment No. 4 to Loan and Security Agreement and Collateral Documents dated May 31, 2009 (collectively the "Loan Agreement");

3. The Validity Guaranty (the "Guaranty") from Dean Calvert (the "Guarantor");

4. A UCC-1 Financing Statement covering all assets of Debtor recorded on August 6, 2004 and continued on June 18, 2009, with the Michigan Department of State.

C. All capitalized terms not defined herein shall have the meaning given to such terms in the Pre-Petition Loan Documents.

D. As of the Petition Date, Debtor was indebted to the Bank in the approximate amount of $116,000.00, plus fees and costs allowed under the Pre-Petition Loan Documents (the "Pre-Petition Indebtedness").

E. The Bank asserts that under the Pre-Petition Loan Documents, Debtor granted to

the Bank liens and security interests in all personal property of Debtor in existence as of the Petition Date (the "Pre-Petition Collateral").

F. Debtor asserts that the value of the Pre-Petition Collateral as of the Petition Date is at least equal to the amount of the Pre-Petition Indebtedness and, therefore, the Bank is fully secured.

G. The Pre-Petition Loan Documents provide for the Bank's dominion of funds and Debtor has no rights in or authority to use the cash receipts generated in its business operations absent an order of the Court or the agreement of the Bank.

H. To continue the operation of its business during the Chapter 11 reorganization process, Debtor represents that it must use cash collateral and obtain secured financing from the Bank to pay post-Petition Date obligations incurred by Debtor in the ordinary course of its business.

I. Debtor desires that the Bank continue its line of credit after the Petition Date under the terms of the Pre-Petition Loan Documents to enable Debtor to continue to operate pursuant to the terms and conditions described in this Order.

J. Debtor urgently requires financing under Section 364 of the Bankruptcy Code to fund daily operations. Debtor's inability to fund daily operations could result in a long-term negative impact on the value of Debtor to the prejudice and detriment of Debtor and its creditors, customers and employees.

K. Debtor represents that it is presently unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense, unsecured credit allowable under Section 364(a) or (b) of the Code or secured credit under Section 364(c) of the Code, other than credit from the Bank as provided in this Order pursuant to Section 364(d) of the Code.

L. Good cause has been shown for entry of this Order. Among other things, the entry of this Order will minimize disruption of Debtor's business as a going concern and will increase the possibility of a successful rehabilitation, and, therefore, is in the best interest of Debtor, the estate, and its creditors.

M. The terms of this Order and the financing contemplated herein have been negotiated at arms-length with all parties represented by experienced counsel, are fair and reasonable under the circumstances, are for reasonably equivalent value and fair consideration, and are in good faith as that term is used in §364(e) of the Code. Accordingly, the Bank in making advances pursuant to this Order is entitled to the protection subscribed in §364(e) of the Code.

N. Debtor will provide notice of this Order to the U.S. Trustee's office, all creditors holding secured claims of record who have an interest in the cash collateral of Debtor, the unsecured creditor's committee (if there is one) and its counsel (if counsel has been retained) and the creditors holding the 20 largest unsecured claims (according to the list filed by Debtor pursuant to Bankruptcy Rule 1007(d)), and such notice shall constitute sufficient "notice and a hearing," without the need for notification of any further entities under Section 102 of the Code and Bankruptcy Rules 2002 and 4001.

O. This Order is entered in a "core" proceeding within the meaning of 28 U.S.C. § 157.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

SECTION 1: USE OF CASH COLLATERAL

1.1 Debtor is authorized to use cash collateral in accordance with the First, Second and Third Interim Orders and pursuant to the terms and provisions of this order.

1.2 Debtor shall also be permitted to use cash collateral from the disbursements identified in the Budget, which is attached hereto and incorporated herein as Exhibit A. Debtor may not make an expenditure which exceeds the budgeted line item by more than 10% without first obtaining the consent of the Bank.

1.3 As adequate protection for the interests of 600 York LLC, Oakland Capital Partners, LLC, the State of Michigan Department of Energy, Labor and Economic Growth and the Illinois Department of Revenue (collectively, "Junior Secured Parties"), in Pre-Petition Collateral and as adequate protection for any diminution in the value of the Pre-Petition Collateral on which those Junior Secured Parties hold a valid, binding, perfected non-avoidable security interest, each of those Junior Secured Parties granted a junior priority replacement lien pursuant to Sections 361, 362 and 363 of the Bankruptcy Code in and upon all post-petition property of Debtor, except for claims arising under Chapter 5 of the Bankruptcy Code, provided that such junior replacement liens in favor of these Junior Secured Parties is expressly subordinate in all respects to the liens granted to the Bank to secure the DIP Indebtedness as provided in this Order.

SECTION 2: ADEQUATE PROTECTION

2.1 To secure the DIP Indebtedness, and as adequate protection for and to protect the Bank against any diminution in the value of the Pre-Petition Collateral, the Bank is hereby granted, pursuant to Section 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a first lien on all personal property and assets of Debtor of any kind and nature whatsoever, whether now owned or hereafter acquired by Debtor, and all proceeds, rents or profits thereof, including all of the Pre-Petition Collateral and any unused or unearned retainers, deposits, or prepaid items (collectively, the "DIP Collateral"). Any pre-petition security interest or lien on the Pre-Petition Collateral which is avoided or otherwise preserved for the benefit of Debtor's estate under Section 551 or any other provisions of the Bankruptcy Code shall be subordinate to the security interests in favor of the Bank on the DIP Collateral.

2.2 All liens and security interests in the DIP Collateral granted to the Bank by this Order are deemed duly perfected and recorded under all applicable laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order or act shall be required to effect or continue such perfection, although the Bank may, in its sole discretion, and at Debtor's expense, make any filings or recordations or other acts it deems appropriate with respect to such perfection.

2.3 Through the Final Hearing (hereinafter defined), and thereafter if this Order becomes a Final Order, all collections and proceeds of any Pre-Petition or DIP Collateral and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of Debtor, or to which Debtor shall become entitled to at any time ("Post-Petition Collections") shall be deposited or forwarded into the Blocked Account with the Bank. Post-Petition Collections may provisionally be applied to Pre-Petition Indebtedness and then to the Post-Petition Indebtedness, subject to further court order. All banks in which any lockboxes and blocked accounts of Debtor exist are authorized and directed to comply with any request of the Bank to turn over to the Bank all funds therein, or collected after the Petition Date, without offset or deduction of any kind.

2.4 No sale, lease or other disposition of DIP Collateral outside of the ordinary course of business (including collection of accounts receivable or any liquidation, auction or other similar sales) may be done without the Bank's prior written consent. The Bank's right to credit bid the Bank's claims at any such sales pursuant to Section 363(k) of the Bankruptcy Code shall be preserved.

2.5 Debtor shall permit the Bank and any authorized representatives designated by the Bank, including auditors and appraisers engaged by the Bank, reasonable access to visit and inspect any of the properties of Debtor during normal business hours, to review Debtor's financial and accounting records, and to make copies and take

extracts therefrom, and to discuss Debtor's affairs, finances and business with Debtor's officers, consultants, and accountants. Without limiting the generality of the foregoing, Debtor shall promptly provide to the Bank and its designated representatives any information or data reasonably requested to monitor Debtor's compliance with the provisions of this Order and to perform audits, appraisals or other valuation analyses of any property of Debtor.

2.6 All of the Bank's rights are expressly reserved if no Final Order is entered within three business days after the Final Hearing Date. Nothing in this Order shall constitute a finding with respect to the adequacy of the protection of the Bank's interests in the Pre-Petition Collateral. Except as otherwise specifically provided herein, the Bank does not waive any rights it has pursuant to the Pre-Petition Loan Documents, and the Bank shall retain all rights available pursuant to the Bankruptcy Code or any other applicable law. The Bank has no commitment to provide funding beyond (i) the occurrence of an event of default; or (ii) the Termination Date (as hereinafter defined).

2.7 The rights and obligations of Debtor and the rights, claims, liens, security interests and priorities of the Bank arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by Debtor, as pre-Petition Date debtor, under the Pre-Petition Loan Documents.

2.8 The provisions of this Order shall be binding upon and inure to the benefit of the Bank and Debtor.

2.9 This Motion is set for further hearing (the "Final Hearing") before this Court on May 26, 2011 at 10:00 a.m.(the "Final Hearing Date"), at which time any party in interest may present any timely filed objection. Pending the Final Hearing, Debtor may borrow up to eighty-five percent (85%) of Eligible Accounts Receivable as defined in the Loan Agreement, which is the amount necessary to avoid immediate and irreparable harm under Bankruptcy Rule 4001(c)(2). The Bank shall have no obligations hereunder beyond the Final Hearing Date unless this Order becomes a Final Order within three business days after the Final Hearing Date. Debtor shall promptly serve a notice of entry of this Order and the Final Hearing, together with a copy of this Order, by regular mail upon the parties required by Federal Rules of Bankruptcy Procedure 4001. The notice of entry of this Order and the Final Hearing shall state that objections shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of Illinois, which objections shall be served so that the same are received on or before 5:00 p.m. EST on April 26, 2011 by (i) Counsel for Debtor; and (ii) Christopher J. Horvay, Esq., Counsel for Crestmark Bank, Gould & Ratner, LLP, 222 N. LaSalle Street, Suite 800, Chicago, Illinois, 60601. Notwithstanding the foregoing, the Court may enter one or more additional cash collateral orders and therefore continue the Final Hearing.

2.10 This Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize Debtor to obtain credit on the terms and conditions upon which Debtor and the Bank have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is therefore subject to the protections contained in Section 364(e) of the Bankruptcy Code except as otherwise provided herein.

2.11 Debtor, at its expense, shall (a) continue to keep all collateral insured to its maximum insurable value against all loss, peril and hazard and name the Bank as lender's loss payable under such policies; and (b) pay any and all post-petition taxes, assessment and governmental charges, except to the extent such are being contested in good faith by appropriate proceedings and Debtor shall maintain appropriate cash reserves for these expenses and (c) provide the Bank with proof of the foregoing within 3 days of written demand. Copies of all federal tax returns, federal tax deposits and other payments made by Debtor during the pendency of this Order shall be mailed to Bank.

Enter:  _____

Honorable John H. Squires
United States Bankruptcy Judge

Dated: APR 28 2011

**Prepared by counsel of Movant:**

Abraham Brustein, #0327662
Julia Jensen Smolka, #6272466
DiMonte & Lizak, LLC
216 W. Higgins Rd.
Park Ridge, IL 60068
Tel: (847) 698-9600
Fax: (847) 698-9623
abrustein@dimontelaw.com
jsmolka@dimontelaw.com

Rev: ILNB20100428_bko

# CASH REPORT

| | Mon 5/2 | Tue 5/3 | Wed 5/4 | Thu 5/5 | Fri 5/6 | Mon 5/9 | Tue 5/10 | Wed 5/11 | Thu 5/12 | Fri 5/13 | Mon 5/16 | Tue 5/17 | Wed 5/18 | Thu 5/19 | Fri 5/20 | Mon 5/23 | Tue 5/24 | Wed 5/25 | Thu 5/26 | Fri 5/27 | Mon 5/30 | Tue 5/31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Daily Sales Plan** | | | | | | | | | | | | | | | | | | | | | | |
| **UNBOOKED ORDERS** | | | | | | | | | | | | | | | | | | | | | | |
| Weekly Total | | | | | | | | | | | | | | | | | | | | | | |
| **Beginning Bank Balance (actual)** | 3,700 | 2,876 | 10,483 | 3,600 | 3,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| **Additions:** | | | | | | | | | | | | | | | | | | | | | | |
| 80% of Sales (previous day) | | | | | 19,675 | | | 15,000 | | 10,000 | | | | | 30,000 | | | 25,000 | 9,774 | 37,110 | 10,000 | |
| COD Orders (adds costs @ 50%) | | | | | 30,575 | | | | | 55,000 | | | | | | 15,500 | 7,887 | 21,555 | 8,000 | 101,884 | | |
| Order Prepayment (w/o costs) | | 2,960 | | | | | 172 | 8,000 | | | | | | | | | | | | | | |
| Collections/Recourses/Fees | 20,000 | | | | | | | | | | | | | | | | | | | | | |
| From investors | | | | | | | | | | | | | | | | | 120 | | 1,963 | 3,000 | | |
| **Total Additions:** | 0 | 2,960 | 0 | 0 | 2,880 | 18,620 | 4,800 | 16,800 | 1,956 | 4,800 | 12,800 | (384) | 1,416 | 3,216 | 31,500 | 15,500 | 7,887 | 21,555 | 8,000 | 55,942 | 3,000 | 3,000 |
| **Total Available for Check Clearing:** | 12,876 | 25,836 | 10,483 | 0 | 2,880 | 18,620 | 4,800 | 16,800 | 1,956 | 4,800 | 12,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | | | |
| **Cash Available for Planned Payments:** | 12,876 | 25,836 | 10,483 | (2,717) | (4,800) | (33,300) | (33,200) | (9,881) | (13,984) | (1,184) | (384) | (3,364) | (2,947) | (18,887) | (29,707) | (24,907) | (49,549) | (34,712) | (42,833) | (18,345) | (8,345) | |
| **Subtractions:** | | | | | | | | | | | | | | | | | | | | | | |
| Issued Checks To Clear | | | | | | | | | | | | | | | | | | | | | | |
| Total Checks Clearing: | | | | | | | | | | | | | | | | | | | | | | |
| **Planned Payments:** | | | | | | | | | | | | | | | | | | | | | | |
| Production Costs (MFG) | 1,800 | 13,554 | 11,638 | 3,000 | 1,563 | 20,500 | 3,000 | 37,300 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 31,500 | 15,500 | 7,887 | 21,555 | 8,000 | 55,942 | 3,000 | 3,000 |
| Normal Overhead Exp's | | | 1,563 | 1,963 | 3,000 | 1,700 | | 1,963 | 17,740 | 1,000 | | | 1,963 | 17,740 | 120 | | 1,963 | 19,823 | 17,740 | 2,325 | | |
| Deals/Upcharges/Old Sins | 13,554 | | 23,620 | | | | | | | | | | | | | | | | | | | |
| Structured Payment Plans | | | | | | | | | | | | | | | | | | | | | | |
| **Total Planned Payments:** | 10,000 | 15,354 | 13,200 | 4,963 | 26,620 | 20,500 | 4,700 | 37,300 | 4,963 | 20,740 | 4,000 | 3,000 | 3,000 | 6,163 | 49,240 | 15,620 | 7,887 | 21,555 | 9,963 | 20,740 | 3,000 | 3,000 |
| Issued Checks To Clear | | | | | | | | | | | | | | | | | | | | | | |
| Structured Payment Plans | | | | | | | | | | | | | | | | | | | | | | |
| **Total Subtractions:** | 10,000 | 15,354 | 13,200 | 4,963 | 26,620 | 20,500 | 4,700 | 37,300 | 4,963 | 20,740 | 4,000 | 3,000 | 3,000 | 6,163 | 49,240 | 15,620 | 7,887 | 21,555 | 9,963 | 20,740 | 3,000 | 3,000 |
| **NET CASH FLOW:** | 2,876 | 10,483 | (2,717) | (7,680) | (31,420) | (33,300) | (9,881) | (33,200) | 1,956 | (13,984) | (5,184) | (3,384) | (1,584) | (2,947) | (18,887) | (29,707) | (32,794) | (49,549) | (34,712) | (42,833) | (11,345) | (3,670) |
| **ENDING CASH BALANCE:** | | | | | | | | | | | | | | | | | | | | | | |

## WEEKLY SUMMARY

| | | | | | |
|---|---|---|---|---|---|
| Beg. Cash Balance | | 12,876 | 25,840 | (13,984) | (18,887) |
| TOTAL INFLOWS: | | 29,438 | 66,800 | 43,500 | 55,942 |
| Production Costs (MFG) | 42% | 29,438 | 66,800 | 43,500 | 55,942 |
| Normal Overhead Exp's | 58% | 40,699 | 21,403 | 21,903 | 19,823 |
| Deals/Upcharges/Old Sins | 0% | 0 | 0 | 0 | 0 |
| Structured Payment Plans | 0% | 0 | 0 | 0 | 0 |
| TOTAL OUTFLOWS: | 100% | 70,137 | 88,203 | 65,403 | 75,765 |
| NET CASH FLOW: | | (44,297) | 17,436 | (4,903) | (23,946) |
| ENDING CASH BALANCE: | | (31,420) | (13,984) | (18,887) | (42,833) |

## Planned Checks to Issue

### Production Costs (MFG)

| | Mon 5/2 | Tue 5/3 | Wed 5/4 | Thu 5/5 | Fri 5/6 | Mon 5/9 | Tue 5/10 | Wed 5/11 | Thu 5/12 | Fri 5/13 | Mon 5/16 | Tue 5/17 | Wed 5/18 | Thu 5/19 | Fri 5/20 | Mon 5/23 | Tue 5/24 | Wed 5/25 | Thu 5/26 | Fri 5/27 | Mon 5/30 | Tue 5/31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Production Costs Cushion (checks) | 0 | 152 | | | | | 172 | | | | | | | | | | | | | | | |
| Cheempoint | | 1,648.50 | | | | 10,500 | | | | | | | | | | | | | | | | |
| Prairie State | | | | | | | 2,828.00 | | | | | | | | | | | | | | | |
| Shorr Packaging | | | | | | | | | | | | | | | | | | | | | | |

### Co-Pak Expenses
- Co-Pak Ingredients: 10,000.00 (Fri 5/6); 10,000.00 (Mon 5/9); 29,300.00 (Wed 5/11); 28,500.00 (Fri 5/20)
- Co-Pak Fees

### Normal Overhead Exp's

**Employee Expenses**
| | Tue 5/3 | Thu 5/5 | Fri 5/6 | Thu 5/12 | Fri 5/13 | Thu 5/19 | Fri 5/20 | Mon 5/23 | Thu 5/26 |
|---|---|---|---|---|---|---|---|---|---|
| Rick Mills | 5,460.33 | | 4,000.00 | | | | | | |

**Shipping Vendors**
| | Tue 5/3 | Wed 5/4 | Thu 5/5 | Fri 5/6 | Tue 5/10 | Thu 5/12 | Fri 5/13 | Mon 5/16 | Thu 5/19 | Fri 5/20 | Mon 5/23 | Thu 5/26 | Fri 5/27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Estes (G.Wolfe CC) | 1,562.50 | 1,562.50 | 1,562.50 | 1,000.00 | | 1,562.50 | 1,000.00 | 1,000.00 | 1,562.50 | 1,000.00 | | 1,562.50 | 1,000.00 |
| FedEx (G.Wolfe CC) | | | | 500.00 | | | 500.00 | | | 500.00 | | | 500.00 |
| Gentry Enterprises, Inc | | | | 300.00 | | | 300.00 | | | 300.00 | | | 300.00 |
| UPS - Ground | | | | 300.00 | | | 300.00 | | | 300.00 | | | 300.00 |

**Office & Utilities**
| | Tue 5/3 | Thu 5/5 | Fri 5/6 | Tue 5/10 | Thu 5/12 | Mon 5/16 | Thu 5/19 | Mon 5/23 | Thu 5/26 |
|---|---|---|---|---|---|---|---|---|---|
| AT&T (Phones) | | | | | | | | | |
| Calvert Financial Corp | | | | | | | | | |
| Charter One (Bank Fees) | | | | | | | | | |
| Cinco (Phones) | 1,500.00 | | | 1,200.00 | | 1,000.00 | | | |
| ComEd | | | | | | | | | |
| Courtyard By Marriott | | 400.00 | | | 400.00 | | 400.00 | | 400.00 |
| Crestmark Monthend Fees (31st) | | | | | | | | | |
| CRP Holdings (Rent) | 550.00 | | 5,000.00 | | | 5,000.00 | | | 5,000.00 |
| CT Corporation System | | | | | | | | | |
| McCloud | | | 100.00 | | | 100.00 | | | 100.00 |
| Nicor (Gas) | 2,881.00 | | | | | | | | |
| Office/Warehouse Supplies (G.Wolfe) | | | 500.00 | | | 500.00 | | | 500.00 |
| Paychex (Payroll Checks) | | | 7,000.00 | | | 7,000.00 | | | 7,000.00 |
| Paychex (Payroll Taxes) | 300.00 | | 3,000.00 | 500.00 | | 3,000.00 | | | 3,000.00 |
| Paychex Fees(0th) | | | | | | | | | |
| PRF Graphics | | | | | | | | | |
| State Disbursements | | | 40.38 | | | | | | 40.38 |
| Toyota (Forklift) | | | 1,050.00 | | | | | | |
| Toyota (Pallet Truck) | | | 830.00 | | | | | | |
| Travelers Insurance Comapany | | | | | | | | | |
| US Post Office (Postage) | 100.00 | | | | | 1,000.00 | | | |
| Veolia (Waste) | 1,000.00 | | | | | 200.00 | | | |
| Village of Ben (Water) | 200.00 | | | | | | | | 2,324.75 |

| | Mon 5/2 | Tue 5/3 | Wed 5/4 | Thu 5/5 | Fri 5/6 | Mon 5/9 | Tue 5/10 | Wed 5/11 | Thu 5/12 | Fri 5/13 | Mon 5/16 | Tue 5/17 | Wed 5/18 | Thu 5/19 | Fri 5/20 | Mon 5/23 | Tue 5/24 | Wed 5/25 | Thu 5/26 | Fri 5/27 | Mon 5/30 | Tue 5/31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Planned Checks** | 10,000.00 | 15,353.83 | 13,200.00 | 4,962.50 | 26,620.38 | 20,500.00 | 4,700.00 | 37,300.00 | 4,962.50 | 20,740.38 | 4,000.00 | 3,000.00 | 3,000.00 | 6,162.50 | 49,240.38 | 15,620.00 | 7,886.82 | 21,555.00 | 9,962.50 | 20,740.38 | 3,000.00 | 5,324.75 |
| **Weekly Total** | | 70,136.71 | | | | | 88,202.88 | | | | | 65,402.88 | | | | | 75,764.70 | | | | | |